UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jennifer Scott

     v.                                Civil No. 13-cv-216-JL
                                          Opinion No. 2014 DNH 168

Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration

**SUMMARY ORDER**

Jennifer Scott has appealed the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income, which claimed an onset date of February 2008. An administrative law judge at the SSA ("ALJ") ruled that, despite Scott's severe impairments (including, inter alia, osteoarthritis in her knees, bursitis in her hips, pain disorder in her spine, a dislocated shoulder, and segmental myoclonus), she retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Appeals Council later denied Scott's request for review of the ALJ's decision, see id. §§ 404.968(a), 416.1479, so the ALJ's decision became the SSA's final decision on Scott's application, see id. §§ 404.981, 416.1481. She appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security). Scott has filed a motion to reverse

the decision, see L.R. 9.1(b)(1), challenging the ALJ's RFC
assessment as unsupported by substantial evidence.  The
Commissioner of the SSA has cross-moved for an order affirming
the decision, see L.R. 9.1(d), defending the ALJ's assessment of
Scott's RFC.  For the reasons explained below, the court denies
Scott's motion, and grants the Commissioner's.

The ALJ found that Scott had the RFC to perform sedentary
work, see 20 C.F.R. §§ 404.1567(a), 416.967(a), with certain
limitations, viz., she can never climb ladders and can only
occasionally climb stairs, stoop, kneel, crouch, or crawl.  In
arriving at this conclusion, the ALJ gave only limited weight to
the opinions of Scott's treating physician, Karen Palmer.  In a
"Medical Source Statement of Ability to Do Work-Related
Activities," Palmer checked boxes indicating that Scott was
limited in several areas of functioning, including, in relevant
part, reaching (in all directions), handling, and fingering--all
of which she could do only occasionally.

As support for these findings, Palmer referred solely to a
"Functional Capacity Evaluation" performed by Christina Howe, an
occupational therapist and "certified work capacity evaluator,"
in April 2011.  Howe's report of this evaluation expressly states
that its "purpose . . . [was] to provide the physician with
documentation for Social Security Disability."  By the time of

the examination, in fact, the SSA had already denied Scott's
request for disability insurance benefits, as well as her request
for reconsideration of that decision.

In Howe's report of her evaluation, a table lists, under the
heading "Dexterity," the functions "Reaching Forward,"
"Pinching," and "Writing," stating, in the column next to each of
them, "Occasional (up to 1/3 of the day)."  The entry next to
"Reaching Forward" further states, "[r]eaching to approximately
30-40 degrees of shoulder flexion to perform table top activities
in standing was tolerated on an occasional basis," while the
entry next to "Pinching" further states, "[n]o demonstrated
limitation with writing or fine motor coordination though the
client reports paraesthesia's [*sic*] with reported fine motor
work."  (The entry next to "Writing" simply refers to the
"Pinching" entry.)

Howe's full report of the evaluation refers to Scott's
performance on a "functional capacity evaluation device which
assesses an individual's ability to perform the physical demands
present in standing, table height and floor level assembly and
disassembly tasks that require dexterity and sustained physical
tolerances."  During this test, the report states, Scott
demonstrated "increased sign[s] of discomfort" and pain, as well
as "difficulty maintaining [an] appropriate work pace" and "poor

3

tolerance" to both "prolonged positioning" and "repetitive reaching."  The test report further noted that Scott "reported throbbing and burning in the right shoulder" and, in fact, that she "was unable to complete the test with the right hand/upper extremity so she alternated hands."  Howe concluded that these results "indicate a reliable test placing [Scott] at a below sedentary level with regard to her perceived lifting ability."

The ALJ gave Howe's opinion little weight, calling it "the product of a one-time examination conducted specifically for the purposes of disability.  Moreover, Ms. Howe is not an acceptable medical source and her opinion is not entirely consistent with the evidence as a whole."  The ALJ also, as already noted, gave "limited weight" to Palmer's opinion, because it relied upon Howe's opinion--the "reliability of [which] is diminished"--and also because "Palmer's opinion is not consistent with the evidence, as discussed throughout [the ALJ's] decision."

Scott argues that the ALJ erred in giving limited weight to Palmer's opinion that Scott could perform reaching, handling, and fingering tasks only on an occasional basis, since Palmer was one of Scott's treating physicians.  An ALJ must give controlling weight to the opinions of a treating physician only "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and the severity of [the claimant's] impairment(s) is

4

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [her] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2).

As just noted, the ALJ found that Palmer's opinion as to the severity of Scott's impairments was neither well-supported-- relying, as it did, solely on Howe's report of the functional capacity analysis--nor consistent with other evidence in the case record.[1]  Scott does not persuasively demonstrate that these findings were erroneous.  In fact, aside from Howe's report, Scott does not point to anything in the record supporting Palmer's view of Scott's handling and fingering abilities, and, as discussed below, the ALJ acted properly in giving little weight to the only other evidence Scott identifies (the report of a non-examining state agency physician) in support of Palmer's view of Scott's reaching abilities.

_____

[1]Accordingly, there is no merit to Scott's suggestion that, even if the ALJ properly declined to give Palmer's opinion controlling weight, he nevertheless failed to explain the weight he did give it (which, as just noted, was "limited").  See 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (listing supportability and consistency with the record as a whole as among the factors to be considered in weighing the opinion of a medical source).  An ALJ need provide only "'good reasons in his decision for the weight he gave to the [medical] opinions,'" even when those opinions come from a treating source.  Chapin v. Astrue, 2012 DNH 177, 9 (Laplante, J.) (quoting Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)).

As to Palmer's reliance on Howe's test results, Scott says only that the testing "was conducted upon referral from" another one of her treating physicians, Dr. Simon Faynzilberg.  As this court has recognized, however, the results of functional capacity testing performed by a physical therapist, like Howe, are not "evidence from acceptable medical sources" but simply "evidence from other sources," 20 C.F.R. §§ 404.1513, 416.913, and, as such, the ALJ need only "'discuss at least some of [the] reasons'" for the weight he accords such results. Ferland v. Astrue, 2011 DNH 169, 16 (McAuliffe, J.) (quoting and adding bracketing to Titles II and XVI:  Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, SSR 06-03p, 2006 WL 2329939, at *3 (SSA 2006)).  The ALJ did so here, explaining that Howe's observations were "the product of a one-time examination conducted specifically for the purposes of disability" and that they were "not entirely consistent with the evidence as a whole."  That is a sufficient basis for giving little weight to Howe's conclusions.  See id.

In her motion to reverse the ALJ's decision, Scott does not address this reasoning, i.e., she does not dispute that Howe tested her specifically "to provide the physician with documentation for Social Security Disability," nor does she

identify any record evidence that is, in fact, consistent with
Howe's test results.  Scott merely states that "Palmer's opinion
concerning manipulative limitations" (which, again, was based
solely on the results of Howe's functional capacity testing) "is
supported by the most recent RFC assessment completed by" Dr. Syd
Foster, whom the parties identify as a "state agency reviewing
physician" who did not examine Scott.  Unlike Palmer and Howe,
though, Foster opined that Scott had no limitations on handling
or fingering--and Scott does not point to anything else in the
record supporting the view that Scott could only occasionally
manage those activities.  The ALJ properly found, then, that
Howe's opinions that Scott could only occasionally perform
handling and fingering tasks were inconsistent with (which is to
say, completed unsupported by) the balance of the record.

While Foster did agree with Palmer and Howe that Scott was
limited to occasional overhead reaching, the ALJ specifically
noted that "the evidence does not sufficiently support
limitations in reaching."  Of course, "the opinions of State
agency . . . physicians and psychologists can be given weight
only insofar as they are supported by evidence in the case
record, considering such factors as the supportability of the
opinion in the evidence."  Titles II and XVI: Consideration of
Administrative Findings of Fact by State Agency Medical and

7

Pyschological Consultants and Other Program Physicians at the
Administrative Law Judge and Appeals Council Levels of
Administrative Review; Medical Equivalence, SSR 96-6p, 1996 WL
374180, at *3 (SSA 1996).  Scott's motion to reverse does not
address the ALJ's observation that Foster's view of Scott's
reaching abilities was unsupported by the record but, in any
event, that observation is on the mark.

As the ALJ noted, Scott complained of discomfort in her
right wrist at a visit to her doctor in May 2007, when she was
diagnosed with carpal tunnel syndrome.  Despite numerous medical
appointments in the interim, however, Scott did not mention any
problems with her right arm or hand again until March 2010.  Over
the next several months, Scott continued to complain of pain and
numbness in her right shoulder and arm, but the results of
physical examinations and other tests on her right arm and hand
were essentially normal (though, in May 2010, a nerve conduction
study indicated mild carpal tunnel syndrome in both wrists, as
the ALJ noted).  Significantly, Scott demonstrated a normal range
of motion and strength in her right arm and hand more or less
throughout these examinations and, while Scott's neurologist
restricted her lifting, he imposed no restrictions on reaching
(or, for that matter, any other manipulative activity).  Though
Scott made complaints of pain and instability in her right

8

shoulder into 2011, she continued to show a normal range of motion and strength in right upper extremity throughout that year and, indeed, at an appointment in mid-October 2011--just a few weeks prior to her hearing before the ALJ--Scott told a provider that "her shoulder was more stable, and her strength was better." The ALJ properly relied on this evidence to find that "the evidence does not sufficiently support [the] limitations in reaching" noted by Foster. See, e.g., Santiago v. Astrue, 2013 DNH 048, 8-10 (Laplante, J.). Again, Scott does not identify any such support in the record (apart from, again, the results of Howe's functional capacity testing that Palmer adopted).

Instead, Scott argues that the ALJ simply "substitut[ed] his lay judgment for that of the medical experts" in rejecting the opinions of Palmer and Foster that Scott's reaching ability was limited. That sort of thing is impermissible for sure, see, e.g., Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), but it did not happen here. In finding that Scott was capable of sedentary work with only postural--and hence, without manipulative--limitations, the ALJ expressly relied on "the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services." These non-examining physicians included not only Foster, but also Dr. Pat Chan, who, in May 2010, specifically

found that Scott suffered from no manipulative limitations
(though he noted she had been recently seen for pain in her right
hand, he also noted that her range of motion "is normal and she
has a good hand grip").[2]

Scott maintains that the ALJ could not have properly based
his determination of her RFC on Chan's opinion because he "was
unaware of the subsequent medical evidence reflecting [her]
carpal tunnel diagnosis, the objective clinical findings that led
to the diagnosis, and treatment and evidence reflecting
manipulative limitations associated with [her] shoulder
impairment."  It is true that "[a] state agency consultant's
opinion that is based on an incomplete record, when later
evidence supports the claimant's limitations, cannot provide
substantial evidence to support the ALJ's decision to deny

---

[2]Unlike Foster, Chan also found that Scott did not suffer
from any postural limitations--so, ultimately, the ALJ adopted
Foster's view of Scott's postural limitations, and Chan's view of
Scott's manipulative limitations.  Scott suggests that, in doing
so, the ALJ was improperly "pick[ing] and choos[ing] from the
RFCs of record sub silentio to craft his findings."  As just
discussed at some length, however, the ALJ adequately explained
why, as he put it, "the evidence does not sufficiently support
limitations in reaching" of the sort identified by Foster.  So
long as an ALJ provides such an explanation, he is free "to piece
together the relevant medical facts from the findings and
opinions of multiple physicians," rather than adopting wholesale
the RFC findings of a "single physician."  Evangelista v. Sec'y
of HHS, 826 F.2d 136, 144 (1st Cir. 1997).

benefits."  Swanburg v. Astrue, 2012 DNH 071, 17 (citing cases)

(Barbadoro, J.).  But that did not happen here either.

First, Scott's carpal tunnel diagnosis was first reached in

May 2007--some three years before, rather than after, Chan

completed his evaluation.[3]  Second, and more importantly, Scott's

treatment history from the spring of 2010 through the fall of

2011 contains no "evidence reflecting manipulative limitations

associated with [her] shoulder impairment."  To the contrary, as

just discussed, those records reflect that Scott consistently

demonstrated a normal range of motion and strength in her

shoulder, and none of her treating physicians identified any

manipulative limitations during that time--aside from Palmer,

whose opinions on that score were based entirely on Howe's report

and, as the ALJ supportably found, were therefore not entitled to

much weight.  An ALJ can properly rely on a state agency

---

[3]Scott asserts that "the ALJ's failure to even consider
[her] medically-diagnosed carpal tunnel syndrome constituted
serious error."  But the ALJ specifically noted that "[n]erve
conduction studies of the upper extremities showed mild bilateral
carpal tunnel syndrome"--and went on to explain, as already
discussed at length, why he found that Scott nevertheless
suffered from no manipulative limitations (which, of course,
neither the neurologist who performed the nerve studies nor any
other treating physician apart from Palmer had ever identified).
Thus, insofar as Scott is arguing that the ALJ erred by not
identifying her carpal tunnel syndrome as a severe impairment,
that error was of no moment, since the ALJ took Scott's carpal
tunnel syndrome into account in determining her RFC.  See Pompa
v. Comm'r of Soc. Sec., 73 Fed. App'x 801, 803 (6th Cir. 2003).

physician's assessment, notwithstanding the claimant's subsequent medical history, when nothing in that history substantially undermines the assessment.  See, e.g., Comeau v. Colvin, 2013 DNH 145, 17-20, aff'd, No. 13-2542 (1st Cir. June 25, 2014).

As this court has recognized, an ALJ can rely "exclusively on the assessments of non-testifying, non-examining physicians" in adjudicating a claimant's RFC, and conflicts between those assessments and other medical testimony "are for the ALJ to resolve." Morin v. Astrue, 2011 DNH 091, 9-10 (citing Berrios Lopez v. Sec'y of HHS, 951 F.2d 427, 431-32 (1st Cir. 1991) and Tremblay v. Sec'y of HHS, 676 F.2d 11, 12 (1st Cir. 1982)). Furthermore, "[t]he ALJ decision to resolve that conflict against the claimant should be affirmed if "'that conclusion has substantial support in the record.'" Id. (quoting Tremblay, 676 F.2d at 12).  For the reasons just discussed, substantial evidence supports the ALJ's decision to rely on Chan's opinion that Scott did not suffer from any manipulative limitations, rather than Foster's opinion that Scott was limited to occasional overhead reaching, or Palmer's opinion that Scott was limited to occasional reaching, handling, and fingering.

For the foregoing reasons, Scott's motion to reverse the ALJ's decision[4] is DENIED, and the Commissioner's motion to affirm that decision[5] is GRANTED.  <u>See</u> 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 8, 2014

cc:  Tamara N. Gallagher, Esq.
     Karen B. Fitzmaurice, Esq.
     Robert J. Rabuck, AUSA
     T. David Plourde, AUSA

_____

[4]Document no. 8.

[5]Document no. 10.

13